UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANTHONY PERRI,

Plaintiff,

-against-

MICHAEL BLOOMBERG, Mayor of the City of New York; JOHN DOAR, Commissioner, Adult Protective Services, The City of New York, Department of Social Services; BRUCE SMITH, Queens Borough Director, Adult Protective Services, The City of New York, Department of Social Services; THE CITY OF NEW YORK,

Defendants.
-----------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-cv-2646 (CBA) (LB)

**AMON, Chief United States District Judge**.

Plaintiff Anthony Perri filed an amended complaint in this pro se action against the City of New York, Mayor Michael Bloomberg, John Doar, Commissioner of the City's Human Resources Administration/Department of Social Services ("HRA"), and Bruce Smith, Queens Borough Director of HRA's Adult Protective Services ("APS") program. On January 25, 2012, the defendants moved to dismiss Perri's amended complaint. For the reasons that follow, the defendants' motion is granted.

## I. BACKGROUND

The plaintiff is a frequent litigant in this Court. See Perri v. Bloomberg, et al., No. 06 CV 403 (CBA), 2011 WL 2119331 (E.D.N.Y. May 27, 2011) (approving settlement and dismissing case); Perri v. Cardozo, et al., No. 06 CV 2846 (ARR) (E.D.N.Y. Sept. 25, 2006) (case dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim on which relief could be granted); Perri v. The United States District Court for the E.D.N.Y., et al., No. 07 CV 282 (ARR) (E.D.N.Y. Jan. 30, 2007) (same); Perri v. City of New York, et al., No. 08 CV 451 (ARR), 2009

WL 3839317 (E.D.N.Y. Nov. 17, 2009) (dismissed without prejudice, following appeal and remand), aff'd, 382 Fed. Appx. 27, 2010 WL 2563404 (2d Cir. 2010); Perri v. Obama, et al., Docket No. 10 CV 5038, 2010 WL 4961802 (E.D.N.Y. Nov. 30, 2010) (dismissed without prejudice); Perri v. Obama, et al., No. 11 CV 165 (ARR), 2011 WL 685826 (E.D.N.Y. Feb. 15, 2011) (dismissed without prejudice); Perri v. Obama, et al., No. 11 CV 1359 (CBA) (E.D.N.Y. Jun. 6, 2011) (dismissed without prejudice); Perri v. Kelly, et al., No. 11 CV 3208 (dismissed without prejudice), 2011 WL 5024299 (E.D.N.Y. Oct. 19, 2011) (reconsideration denied).

The plaintiff's instant complaint alleges that the defendants retaliated against him because of the lawsuit he filed against the City of New York and other defendants pursuant to 42 U.S.C. § 1983, under the caption Perri v. Bloomberg, et al., No. 06-cv-403 (CBA) (hereinafter referred to as the "§ 1983 action"). He alleges: "I was a client of Adult Protective Services and had my business terminated because of my lawsuit in the United States District Court, Eastern District of New York, (See: Perri v. Bloomberg et al. 06-cv-403). I was crudely thrown onto the street, homeless, in an act of retaliation." (Am. Compl. ¶ 23.)

Specifically, the plaintiff alleges that he was first referred to APS in or around January 2005. (Id. ¶ 7.) Pursuant to the recommendation of Dr. Mark Wallace, an APS psychiatrist, the plaintiff was appointed a guardian. (Id.) According to the complaint, the guardian moved the plaintiff into an apartment that he could not afford. (Id. ¶ 9.) The plaintiff alleges that he was able to make ends meet for approximately two years before he once again came to the attention of APS in September 2007 due to a "nonpayment proceeding" for failure to pay his rent. (Id. ¶ 9.) HRA provided the plaintiff with a one-time payment of his rent, and then discontinued services immediately thereafter. (Id.)

The plaintiff alleges that he next came to the attention of APS in the summer of 2008 in connection with another nonpayment proceeding against him. (Id. ¶ 11.) Dr. Wallace again recommended full guardianship and a second relocation. (Id.) However, according to the plaintiff, APS did not follow through with that recommendation. Instead, on September 5, 2008—one day after he filed a document with the Court in his § 1983 action—the plaintiff was suddenly evicted from his home by officers of the NYPD Emergency Services Unit. (Id. ¶ 12.) The plaintiff alleges that his APS caseworker provided him a list of homeless shelters but then never checked on the plaintiff again after he was evicted. (Id. ¶¶ 13, 16.) The plaintiff experienced bouts of homelessness from 2008 to 2011. (Id. ¶¶ 14-18.)

According to the plaintiff, he was next referred by the Civil Court to APS in April 2011 after he received a "notice to 'quit'" from his landlord. (Id. ¶ 18.) The plaintiff alleges that he was told by an APS intake worker that APS would not deny him representation in connection with the ongoing landlord tenant proceeding, and he was referred once again to Dr. Wallace for an evaluation on May 11, 2011. (Id. ¶ 109.) When the plaintiff attempted to explain to Dr. Wallace what he "had been through since June 2008," he was told, "There is no more money for Guardians, the City is not going to represent you." (Id. ¶ 19.) On May 18, 2011 the plaintiff received a notice informing him that he was no longer eligible for services from APS. (Id. ¶ 20.) In addition, the plaintiff alleges that APS denied him services on two subsequent occasions in July 2011 and August 2011. (Id. ¶ 21.)

**II. STANDARD OF REVIEW**

Pro se pleadings "must be read liberally and should be interpreted to raise the strongest arguments that they may suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted). Nevertheless, pro se complaints remain, as any other complaint,

vulnerable to dismissal under Rule 12(b)(6). See Brickhouse v. City of N.Y, 2010 WL 3341845, at *2 (S.D.N.Y. 2010). To withstand a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. DISCUSSION

To state a First Amendment retaliation claim, a plaintiff must allege that (1) his conduct was protected by the First Amendment, and (2) that such conduct prompted or substantially caused the defendant's action. Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002); Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994). The plaintiff alleges that he was retaliated against for filing documents in his § 1983 action, which is protected conduct. See Beechwood Restorative Care Ctr. v. Leeds, 436 F.3d 147, 152 (2d Cir. 2006) ("[C]omplaints, protests, and lawsuits are protected free speech."). The question is whether the plaintiff has adequately alleged that the defendants retaliated against the plaintiff because of this protected conduct.

Retaliatory intent is difficult to plead with specificity in a complaint. Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994). Thus, although "a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." Id. "A plaintiff may establish causation indirectly by showing his speech was closely followed in time by the [retaliatory action]." Sassone v. Quartaro, 598 F. Supp. 2d 459, 467 (S.D.N.Y.

2009) (quoting Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 167 (2d Cir. 2006)).

It is unclear from the plaintiff's complaint whether the plaintiff is alleging that he was retaliated against for initiating his § 1983 action or for filing a particular document in that action, and thus the Court addresses both possibilities. As to the first, the plaintiff's complaint does not allege facts from which it could be inferred that the plaintiff's APS services were terminated because the plaintiff initiated the lawsuit captioned Perri v. Bloomberg, No. 06 CV 403 (CBA). The complaint in that lawsuit was filed on January 25, 2006. The first alleged "termination" of APS services referenced in the plaintiff's complaint occurred in September 2007, when HRA allegedly assisted the plaintiff with a one-time rent payment but discontinued services immediately thereafter. (Am. Compl. ¶ 10.) The bulk of the alleged retaliatory conduct occurred even later, between September 2008 and August 2011. An inference of retaliatory intent cannot be drawn here when at least 19 months passed between the protected conduct and the alleged retaliation. See McAvey v. Orange-Ulster BOCES, 805 F. Supp. 2d 30, 44 (S.D.N.Y. 2011) (holding in Title VII action that "inference of retaliation is not appropriate when more than a year passes between the allegedly protected speech and the adverse employment action"); Contes v. Porr, 345 F. Supp. 2d 372, 383 (S.D.N.Y. 2004) ("Finally, as a matter of law in this Circuit, retaliation will not be inferred when a long period of time passes between the exercise of a First Amendment right (protected conduct) and the imposition of the allegedly retaliatory adverse employment decision"). The complaint alleges no additional facts that would suggest a causal connection between the initiation of the plaintiff's § 1983 action and his problems with APS.

If the alleged protected activity is the filing of a document in Perri v. Bloomberg, 06-cv-403, on September 4, 2008, then the Court could conceivably infer a retaliatory intent based on

temporal proximity, as the plaintiff alleges that he was evicted from his home the following day without assistance from APS. (Id. ¶ 12.) There are other problems, however, with this particular claim. As an initial matter, two of the individual defendants in this action—Commissioner Doar and Director Smith—were not named as defendants in the plaintiff's § 1983 action, and thus it is highly implausible that they would be motivated by the filing of a document in that action to retaliate against the plaintiff. In addition, although Mayor Bloomberg was named as a defendant in the § 1983 action, the particular document filed by the plaintiff in that case on September 4, 2008 had nothing to do with the plaintiff's substantive claims against Mayor Bloomberg. Rather, the document filed was titled "Memorandum of Law/The Perri Report" and is addressed to the President of the United States, three United States Senators, and the Director of Communications of the New York State Commission on Public Integrity. (See Case No. 06-cv-403, Docket No. 134.) This document, which the plaintiff has submitted in several of his federal lawsuits, alleges that the plaintiff has been stalked and targeted by a government conspiracy, and alleges that numerous public tragedies and news events are connected to the conspiracy against him. The document does not mention Mayor Bloomberg, nor does it relate to the claims against him, and thus it is highly implausible that he would be motivated by the filing of this document to effectuate the termination of the plaintiff's APS services or cause the plaintiff to be evicted from his residence.

Moreover, even if there was some basis in the plaintiff's complaint from which a retaliatory intent could be inferred, the complaint fails to allege facts suggesting that any of the individual defendants were personally involved in the termination of his APS services, or in evicting him from his residence. See Houston v. Nassau County, 2012 WL 729352, at *5 (E.D.N.Y. Mar. 7, 2012) (holding that a complaint based on a violation under § 1983 that does

not allege the personal involvement of the defendant is fatally defective on its face); see also Mobley v. O'Gara, 2006 WL 197185, at *8 (E.D.N.Y. Jan. 23, 2006) ("It is well settled that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983."). The plaintiff alleges that the NYPD Emergency Services Unit evicted him from his home, not any of the individual defendants. Similarly, the facts alleged in the complaint suggest that individual APS caseworkers made the determinations to terminate the plaintiff's protective services, not any of the individual defendants. Although the complaint contains conclusory allegations that the individual defendants "became personally involved" in the alleged violations of the plaintiff's rights, there are no facts alleged in the complaint from which this Court could reasonably draw such an inference. (Am. Compl. ¶¶ 25-26.) Accordingly, the plaintiff's claims against the individual defendants must be dismissed on this ground as well.

Lastly, the plaintiff's claim against the City of New York also fails. "In order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal defendant such as the City of New York, a plaintiff must show the existence of an officially adopted policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right." Steele v. City of New York, 2010 WL 1946290, at *1 (E.D.N.Y. 2010) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). The plaintiff recites the elements of a Monell claim, alleging that the "City of New York has a Custom, Policy & Procedure where they Violate Plaintiffs' rights that file Lawsuits against the City" and that there "is a solid link and connection to the [City's] Customs and Procedures and my termination by The City of New York and (APS)." (Am. Compl. ¶ 23-24). However, the complaint contains no factual allegations to support this claim. The plaintiff's "rote recitation" of a Monell claim,

unaccompanied by any factual support, is insufficient to survive a motion to dismiss. Abreu v. City of New York, 657 F. Supp. 2d 357, 360-61 (E.D.N.Y. 2009). Accordingly, the plaintiff's claim against the City of New York is dismissed.

## IV. LEAVE TO AMEND

In his opposition to the defendants' motion to dismiss, the plaintiff requests leave to file an amended complaint. When evaluating a pro se complaint, "a district court should not dismiss without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Valle v. Micro Research Technologies, 2010 WL 3958433, at *4 (E.D.N.Y. 2010) (quoting Thompson v. Carter, 284 F.3d 411, 419 (2d Cir. 2002)). However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). In requesting leave to amend, the plaintiff has not supplied this Court with any facts that he could add to his complaint from which this Court could draw an inference that the termination of his APS services was somehow connected to his § 1983 action. Nor has he provided any additional facts suggesting that he could demonstrate that the individual defendants were involved in the events described in the complaint. Although the Court is not insensitive to the hardships suffered by the plaintiff, it is clear from even the most liberal reading of the complaint that the plaintiff cannot state a valid First Amendment retaliation claim against these defendants based on the facts alleged. Accordingly, the plaintiff's motion to amend is denied.

## V. CONCLUSION

The plaintiff fails to state a claim for First Amendment retaliation, and fails to adequately allege the personal involvement of the defendants. Accordingly, the defendants' motion to

dismiss the plaintiff's complaint is granted. The plaintiff's motion for leave to amend is denied. Having dismissed the plaintiff's complaint, the Court also denies the plaintiff's request for a telephone conference. Finally, the Court declines to appoint a guardian ad litem because, having carefully reviewed the plaintiff's complaint, the Court finds that the appointment of a guardian could not save the plaintiff's claims from dismissal. See Perri v. Obama, 2011 WL 685826, at *3 (E.D.N.Y. 2011) (finding that the appointment of a guardian ad litem would be futile where no guardian could save plaintiff's claims from dismissal). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Dated: Brooklyn, N.Y.
August 13, 2012

/s/
Carol Bagley Amon
Chief United States District Judge